UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHERYL WILLIAMSON | : | |
| | : | CASE NO. |
| | : | |
| *Plaintiff* | : | |
| | : | |
| *v.* | : | |
| | : | |
| CITIMORTGAGE, INC. | : | |
| | : | |
| *Defendant* | : | October 7, 2016 |

## **COMPLAINT**

Plaintiff Cheryl Williamson, by and through her undersigned attorney, hereby files this Complaint against Defendant CitiMortgage, Inc. ("CitiMortgage"), and in support thereof alleges and states as follows:

## **INTRODUCTION**

This is an action for damages, costs, and attorney's fees arising out of CitiMortgage's "dual-tracking" of the Plaintiff by attempting to foreclose on her home after agreeing to modify her mortgage loan.  The Plaintiff seeks relief pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq. ("CUTPA"), and certain common-law claims.

## **JURISDICTION AND VENUE**

1.     This Court has jurisdiction under 12 U.S.C. § 2614.

2.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims over which this Court has

1

original jurisdiction in that they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this District is proper as the Plaintiff Cheryl Williamson is an individual residing in Norwalk, Connecticut, Defendant CitiMortgage transacts business within the State of Connecticut, and the conduct complained of occurred in this District.

## PARTIES

4.      Plaintiff Cheryl Williamson is a natural person residing in Norwalk, Connecticut.

5.      The Plaintiff is a "person" within the meaning of CUTPA and RESPA in that she is a "natural person" pursuant to C.G.S. § 42-110a (3) and an "individual" pursuant to 12 U.S.C. § 2602(5).

6.      Defendant CitiMortgage, Inc. is a corporation organized and existing under the laws of New York, with its registered address at CT Corporation System, Inc., 100 South 5th Street, Suite #1075, Minneapolis, MN 55402, and its principal place of business at 1000 Technology Drive, O'Fallon, MO 63368-2240.

7.      The Plaintiff's loan is a federally related mortgage loan as defined by 12 U.S.C. § 2602(1) in that such loan is secured by a first lien on a one-family unit of residential real property and was made by a lender satisfying the requirements of 12 U.S.C. § 2602(1)(B)(i) or a creditor satisfying the requirements of 12 U.S.C. § 2602(1)(B)(iv).

8.      CitiMortgage was, at all times relevant to this complaint, the loan servicer of the Plaintiff's loan for purposes of 12 U.S.C. § 2605.

## FACTUAL ALLEGATIONS

9.       Plaintiff Cheryl Williamson ("Ms. Williamson") is the sole owner of the home located at 3 Elton Court in Norwalk, Connecticut ("the home").

10.     Ms. Williamson resides at the home along with her developmentally disabled brother and sister, her daughter, and grand-daughter.

11.     In 2009, Ms. Williamson and her stepfather, Frank Capasso ("Mr. Capasso"), purchased the home with a mortgage loan insured by the Federal Housing Administration (FHA) (hereinafter "the mortgage").

12.     Ms. Williamson's purpose in purchasing the home was to provide a stable environment in which she could care for her developmentally disabled brother and sister.

13.     The servicer of the mortgage for the home from the beginning of the period relevant to this Complaint through the present was CitiMortgage.

14.     Mr. Capasso subsequently moved out of the home and quit-claimed his interest in the home to Ms. Williamson.

15.      In 2011, Ms. Williamson fell behind on her mortgage payments due to a reduction in her household income.

16.     In May 2012, CitiMortgage commenced an action to foreclose on the home in the Connecticut Superior Court for the Judicial District of Stamford/Norwalk in a case styled *CitiMortgage Inc. v. Cheryl Williamson*, Case No. FST-CV12-6013838-S.

17.     On or around September 10, 2014, Ms. Williamson submitted an application for a loan modification to CitiMortgage, which CitiMortgage received on or about September 10, 2014.

18.     In a letter dated September 25, 2014, CitiMortgage acknowledged receipt of Ms. Williamson's loss mitigation application and her supporting documentation.   A true and correct copy of this letter is attached as Exhibit A.

3

19.     In the letter, CitiMortgage requested that Ms. Williamson provide additional documentation to complete their loss mitigation application, consisting of "legible" copies of the bank statement, tax returns, and borrower assistance forms that Ms. Williamson had already submitted and the original of her hardship letter, to be submitted before October 26, 2014.  See Exhibit A.

20.     CitiMortgage further stated that once Ms. Williamson's loss mitigation application was complete and CitiMortgage was evaluating her application, "foreclosure activity will cease."  See Exhibit A.

21.     Thereafter, on or around October 1, 2014, Ms. Williamson fully submitted the documentation requested by CitiMortgage in its September 25, 2014 letter, which CitiMortgage received on or about October 1, 2014.

22.     Following this submission of documents on or around October 1, 2014, Ms. Williamson had submitted a complete loss mitigation application to CitiMortgage within the meaning of 12 C.F.R. § 1024.41(b)(1) .

23.     This was Ms. Williamson's first complete loss mitigation application since January 10, 2014, the effective date of the Consumer Financial Protection Bureau's Mortgage Servicing Rule, 12 C.F.R. § 1024 et seq.

24.     In a letter and offer dated October 14, 2014, CitiMortgage informed Ms. Williamson that she had been approved to enter into a trial loan modification under the federal government's FHA Home Affordable Modification Program ("FHA-HAMP") which, following "trial" modification payments made in the months of November 2014, December 2015, and January 2014, would result in the permanent modification of the mortgage as of February 1,

2015 and allow Ms. Williamson to "avoid foreclosure." A true and correct copy of CitiMortgage's letter and the FHA-HAMP Trial Period Plan are attached as Exhibit B.

25.     Ms. Williamson and Ms. Cappaso signed and returned the FHA-HAMP Trial Period Plan to CitiMortgage on or around October 21, 2014, which CitiMortgage received on or around October 21, 2014. See Exhibit B.

26.     Thereafter, Ms. Williamson made all payments required under the trial loan modification, which were accepted by CitiMortgage, and the mortgage was permanently modified effective February 1, 2015.

27.     CitiMortgage nevertheless pressed forward with the foreclosure of the home during the trial loan modification period. It persisted in its efforts to foreclose on the home even after it had approved a permanent loan modification, Ms. Williamson and Mr. Capasso had accepted the permanent loan modification, and CitiMortgage had accepted their first modified mortgage payment.

28.     On September 4, 2014, CitiMortgage moved for a judgment of strict foreclosure. On September 22, 2014, the court entered a judgment of strict foreclosure and set a law day for November 18, 2014.

29.     CitiMortgage received Ms. Williamson's complete loan modification application on or around October 1, 2014, and it offered her an FHA-HAMP trial loan modification on October 14, 2014.

30.     However, CitiMortgage failed to take reasonable steps to vacate the foreclosure judgment or extend the November 18, 2014 law day, which would have resulted in Ms. Williamson losing her home during the first month of her three-month trial loan modification.

31.     Due to CitiMortgage's inaction, on October 12, 2014 Ms. Williamson moved to open the strict foreclosure judgment, incurring a $125 filing fee and requiring her to take a day off work in order to attend the hearing on October 27, 2014.

32.     At the hearing on October 27, 2014, Ms. Williamson explained to the court and CitiMortgage's attorney that CitiMortgage had offered her a three-month trial loan modification, which she had accepted.

33.     On that date, the court modified the judgment of strict foreclosure so as to extend Ms. Williamson's law day until February 3, 2015.

34.     Ms. William continued making "trial" loan modification payments to CitiMortgage, and she successfully completed the FHA-HAMP trial loan modification at the end of December 2014 after making her third and final trial payment.  CitiMortgage offered Ms. Williamson a permanent loan modification thereafter.

35.     Again, CitiMortgage failed to take reasonable steps to vacate the judgment of strict foreclosure or extend the February 3, 2015 law day even though it had approved Ms. Williamson for a permanent loan modification.

36.     On January 12, 2015, Ms. Williamson received an email from a CitiMortgage employee stating that the "final documents" for her permanent loan modification would be mailed to her in a "couple of days."

37.     In actuality, CitiMortgage failed to send Ms. Williamson the final documents for ten days, despite the impending law day.

38.     CitiMortgage also failed to take reasonable steps to vacate the foreclosure judgment, extend the February 3, 2015 law day, or otherwise cancel or delay the foreclosure of the home.

39.     On January 21, 2015, facing the imminent foreclosure of her home despite CitiMortgage's approval of a permanent loan modification for the mortgage, Ms. Williamson again moved to open the judgment of strict foreclosure, incurring another $125 filing fee and requiring her to take a day off work to attend the hearing on February 2, 2015.  A true and correct copy of her Motion to Open is attached as Exhibit C.

40.     On January 22, 2015, CitiMortgage mailed two separate packages to Ms. Williamson containing (1) a cover letter back-dated to January 12, 2015, a partial claim agreement, a subordinate note, and a subordinate mortgage and (2) a cover letter back-dated to January 12, 2015 and the permanent loan modification agreement modifying the mortgage effective February 1, 2015.  A true and correct copy of CitiMortgage's cover letter and enclosed partial claim agreement, signed and recorded subordinate mortgage, and signed subordinate note are attached as Exhibit D.  A true and correct copy of CitiMortgage's cover letter and enclosed loan modification agreement are attached as Exhibit E.

41.     Upon information and belief, these two packages were the "final documents" for the permanent loan modification that CitiMortgage's employee had told Ms. Williamson would be mailed out in a "couple of days" on January 12, 2015.

42.     Both of CitiMortgage's January 12, 2015 cover letters gave Ms. Williamson a hard deadline of January 26, 2015 to accept CitiMortgage's offer, just four days after CitiMortgage mailed these documents to her.  See Exhibit D ("If you fail to notify us of your acceptance of the offer to modify your loan by January 26, 2015, this offer has been revoked. There will be no extensions of time granted.   Your request for assistance will be closed without further notice or consideration.")  and Exhibit E ("It is important that you sign and return the

signed Partial Claim Agreement […] by January 26, 2015 or this Partial Claim Agreement will be considered null and void and we will resume collection and foreclosure activity.")

43.     Ms. Williamson received the packages containing CitiMortgage's modification offer and the partial claim agreement in the early evening of Friday, January 23, 2015, meaning she had only until Monday, January 26, 2015 to accept the loan modification and return the signed partial claim agreement to CitiMortgage, just three days.

44.     Given the short deadline CitiMortgage gave them to sign and return the partial claim and accept the loan modification and the upcoming weekend, Ms. Williamson and Mr. Capasso went to an after-hours notary that Friday night to execute the documents.  Ms. Williamson mailed the signed partial claim and loan modification agreement back to CitiMortgage that evening, thereby accepting CitiMortgage's offer to modify her loan.

45.     Thereafter, Ms. Williamson logged into CitiMortgage's online account system for the mortgage, which stated that on 1/26/2015 "We received your complete modification document" and "Your mortgage modification is complete."

46.     On approximately January 29, 2015, Ms. Williamson made her mortgage payment due for February 1, 2015, which was accepted by CitiMortgage.

47.     The hearing on Ms. Williamson' Motion to Open the Judgment of Strict Foreclosure was held on February 2, 2015, one day before her law day.

48.     At the hearing, Ms. Williamson explained that she had completed a trial loan modification, accepted a permanent loan modification, and made her first modified payment and showed documentation of this to CitiMortgage's attorney.

49.     CitiMortgage's attorney nevertheless opposed Ms. Williamson's request that the court open and vacate the judgment of strict foreclosure.

50.     CitiMortgage's attorney further appeared to be unaware that Ms. Williamson had successfully completed a trial loan modification, that CitiMortgage had offered her a permanent loan modification, that Ms. Williamson and Mr. Capasso had accepted CitiMortgage's permanent loan modification, and that Ms. Williamson had made and CitiMortgage had accepted her first modified payment for February 2015.

51.     Despite CitiMortgage's objections, the court nevertheless ordered that the judgment of strict foreclosure be opened and vacated.  The court further ordered that the foreclosure case be continued until February 23, 2015, by which date CitiMortgage was required either to withdraw the foreclosure case or obtain a new foreclosure judgment.  A true and correct copy of the court's February 2, 2015 order is attached as Exhibit F.

52.     CitiMortgage did not withdraw the foreclosure case.

53.     Instead, CitiMortgage continued treating Ms. Williamson's mortgage as delinquent and pushed forward with the foreclosure of the home.

54.     On February 18, 2015 CitiMortgage filed a new motion for judgment of strict foreclosure requesting that the court again set a law day to foreclose on the home along with a new appraisal of the home. A true and correct copy of CitiMortgage's Motion for Judgment of Strict Foreclosure is attached as Exhibit G.

55.     Ms. Williamson subsequently received a letter from CitiMortgage's attorneys dated February 18, 2015 informing her that her home was "in foreclosure as a result of the property owner's default" and "within the next 60 to 90 days, title to [the home] is expected to be transferred to CitiMortgage, Inc."

56.     Because CitiMortgage did not withdraw the foreclosure case, Ms. Williamson again had to take another day off from work to attend the hearing on February 23, 2015.

57.     At the hearing on February 23, 2015, the court ordered the dismissal of the foreclosure case.  Over CitiMortgage's objection, the court further ordered CitiMortgage not to charge Ms. Williamson's account for the costs associated with CitiMortgage's motion for judgment of strict foreclosure and the appraisal it filed on February 18, 2015.  A true and correct copy of the court's February 23, 2015 order is attached as Exhibit H.

58.     CitiMortgage's actions and inactions ran afoul of the prohibition on "dual-tracking" of borrowers in foreclosure during loss mitigation review contained in 12 C.F.R. § 1024.41(g) and the specific representations it made to Ms. Williamson in its September 25, 2014 letter, the FHA-HAMP Trial Period Plan, and in its offer to permanently modify her loan.

59.     CitiMortgage's actions and inactions further ran afoul of the requirement that it provide borrowers with at least 14 days to accept or reject a loss mitigation offer as provided by 12 C.F.R. § 1024.41(e)(1).  CitiMortgage gave Ms. Williamson only three days.

60.     As a result of the actions and inactions of CitiMortgage, Ms. Williamson had to expend time and money to vacate the foreclosure judgment and prevent the entry of a new foreclosure judgment, including paying filing fees to open the judgment and missing work to attend court hearings.

61.     Upon information and belief, as a result of the actions and inactions of CitiMortgage, Ms. Williamson has been improperly assessed court costs, attorney's fees, and/or other fees.

62.     As a result of the actions and inactions of CitiMortgage, including its failure to timely vacate the foreclosure judgment, its filing of a new foreclosure judgment, and its back-dating of the loan modification offer, Ms. Williamson has suffered severe emotional distress including extreme stress, irritability, difficulty sleeping, loss of appetite, and fear for the well-

being of her two developmentally disabled siblings, who depend on Ms. Williamson and would be detrimentally affected by the foreclose of the home.

## CLAIMS

### Count I

### VIOLATION OF RESPA

63.     The Plaintiff incorporate by reference the allegations in Paragraphs 1–62 as if fully set forth herein.

64.     The Defendant CitiMortgage violated RESPA and its implementing regulations in one or more of the following ways:

a)     by moving for a foreclosure judgment after Ms. Williamson submitted a complete loss mitigation application, in violation of 12 C.F.R. § 1024.41(g);

b)     by failing to give Ms. Williamson at least 14 days to accept or reject its offer to permanently modify her loan after providing her with the offer, in violation of 12 C.F.R. § 1024.41(e)(1); and/or

c)     by failing to give Ms. Williamson at least 7 days to accept or reject its offer to permanently modify her loan after providing her with the offer, in violation of 12 C.F.R. § 1024.41(e)(1).

65.     The Consumer Financial Protection Bureau, the federal agency that promulgates RESPA regulations and is tasked with enforcing its provisions, receives complaints submitted by consumers.  Its database shows that since January 10, 2014, the effective date of the Consumer Financial Protection Bureau's Mortgage Servicing Rule, it has received approximately 3,100 complaints against CitiMortgage related to either "loan modification, collection, foreclosure" or "loan servicing, payments, escrow account."  28% of CitiMortgage's responses to complaints

were disputed by the borrower.  CitiMortgage declined to provide a public response to any of the complaints.

66.     Upon information and belief, CitiMortgage has engaged in a pattern or practice of noncompliance with 12 C.F.R. § 1024.41(g) and 12 C.F.R. § 1024.41(e)(1) with respect to Ms. Williamson as well as other customers.  *See, e.g.,* First Amended Complaint, *Tanasi v. CitiMortgage,* No. 3:16-cv-00727-VAB (D. Conn. Aug. 19, 2016) (alleging dual-tracking by CitiMortgage in violation of RESPA).

67.     As a direct, proximate, and foreseeable result of the foregoing acts and omissions, Ms. Williamson has suffered actual damages, including court costs, lost wages, emotional distress, and upon information and belief, foreclosure-related costs and fees improperly assessed to her mortgage account.

68.     As a result of the above RESPA violations, CitiMortgage is liable to Ms. Williamson for actual and consequential damages, statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B), costs, and attorney's fees.

<u>Count II</u>

VIOLATION OF CUTPA

69.     The Plaintiff incorporate by reference the allegations in Paragraphs 1-62 as if fully set forth herein.

70.     CitiMortgage's actions ran afoul of the servicing standards in the consent judgment with CitiMortgage in the National Mortgage Settlement ("the National Mortgage Settlement"), which prohibit it from "dual tracking" borrowers by pursuing foreclosure during

loss mitigation.[1]  The standards include, but are not limited to, the requirement that CitiMortgage "not proceed with [a] foreclosure sale" while it is reviewing a complete loan modification application, that it "delay [a] foreclosure sale" if a borrower accepts a loan modification until the point the borrower breaches the trial modification, and that it "not move to judgment [...] or proceed with a foreclosure sale" if "the borrower is in compliance with the terms of a trial loan modification."  The standards further require CitiMortgage to timely and accurately communicate borrowers' loss mitigation status to its foreclosure attorneys.

71.    CitiMortgage's actions were also contrary to its April 13, 2011 consent order with the Office of the Comptroller of the Currency, U.S. Department of the Treasury ("the OCC Consent Order"), which obligated CitiMortgage to take "all necessary and appropriate steps to [...] enhance the Bank's residential mortgage servicing and foreclosure processes," including so as to promptly and accurately respond to borrower's loss mitigation requests and "ensure that when the borrower's loan has been approved for modification on a trial or permanent basis that [...] no foreclosure or further legal action predicate to foreclosure occurs, unless the borrower is deemed in default on the terms of the trial or permanent modification."[2]

72.    CitiMortgage further failed to adhere to the Federal Housing Administration's rules and other guidance pertaining to the servicing of FHA-insured mortgage, including the FHA's prohibition on "mov[ing] forward with a scheduled foreclosure sale during [loss mitigation] review" and requirement that servicers "suspending foreclosure proceedings" during

---

[1] See *United States of America, et al* v. *Bank of America Corp., et al*, United States District Court for the District of Columbia, Docket No. 1:12-cv-00361 (April 4, 2012), Exhibit A, available at http://www.nationalmortgagesettlement.com/

[2] See *Consent Order*, AA-EC-11-13 (April 13, 2011).  An electronic version is available at https://www.occ.gov/news-issuances/news-releases/2011/nr-occ-2011-47c.pdf

a trial loan modification, give borrowers at least 14 calendar days to accept or reject a loss

mitigation offer, and terminate foreclosure proceedings following borrowers' acceptance of a

permanent loan modification.[3]

73.    CitiMortgage's actions described herein were willful, wanton, and/or reckless and

indicate a reckless disregard for the just rights or safety of others and/or the consequences of its

actions.

74.    The actions of CitiMortgage were undertaken in the conduct of trade or

commerce.

75.    CitiMortgage has engaged in unfair and/or deceptive acts or practices within the

meaning of C.G.S. § 42-110b(a) including, but not limited to:

   a)    "Dual-tracking" Ms. Williamson by failing to delay the foreclosure of the

home following receipt on or around October 1, 2014 of Ms. Williamson's complete loan

modification application, following Ms. Williamson's acceptance of and performance on

the FHA-HAMP trial loan modification, and after offering her a permanent loan

modification;

   b)    "Dual-tracking" Ms. Williamson by moving for another foreclosure

judgment after she had accepted a permanent loan modification;

   c)    Back-dating time-sensitive letters it sent to Ms. Williamson, including the

permanent loan modification offer and the partial claim;

   d)    Failing to provide sufficient time to Ms. Williamson to accept or reject a

loan modification offer, including by delaying mailing the January 12, 2015 permanent

---

[3] See Mortgagee Letter 2013-40 (November 1, 2013).  An electronic version is available at
http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/lmmltrs

loan modification offer for 10 days, thereby giving Ms. Williamson only three days to accept the offer;

e)    Failing to timely and accurately communicate Ms. Williamson's loss mitigation status to its foreclosure attorneys;

f)    Failing to instruct its foreclosure attorneys to delay the foreclosure during loss mitigation review, during the trial loan modification, after approving Ms. Williamson for a permanent loan modification, and/or after Ms. Williamson accepted a permanent loan modification; and/or

g)    Assessing to Ms. Williamson's mortgage account costs and fees incurred as a result of its violations of 12 C.F.R. § 1024.41(g).

76.    CitiMortgage's actions have offended public policy, including that set forth in RESPA, the mortgage servicing rules issued by the Consumer Financial Protection Bureau's found at 12 C.F.R. § 1024 et seq., the National Mortgage Settlement, the OCC Consent Order, and the Federal Housing Administration's rules and other guidance pertaining to the servicing of FHA-insured mortgages.

77.    CitiMortgage's actions are willful, immoral, unscrupulous, unethical, and/or oppressive, and cause substantial injury to customers such as Ms. Williamson.

78.    As a direct, proximate, and foreseeable result of the foregoing acts and omissions, Ms. Williamson has suffered an "ascertainable loss" as that term is used in C.G.S. § 42-110g(a), including but not limited to court costs, lost wages, and, upon information and belief, foreclosure-related costs and fees improperly assessed to her mortgage account.

79.    As a result of its violation of CUTPA, CitiMortgage is liable to the Plaintiff for actual and consequential damages, costs, and attorney's fees pursuant to C.G.S. § 42-110g(d).

80.     A copy of this pleading has been mailed to the Attorney General and the

Commissioner of Consumer Protection pursuant to C.G.S. § 42-110g(c).

<u>Count III</u>

NEGLIGENCE

81.     The Plaintiff incorporates by reference the allegations in Paragraphs 1-62 and 70-

72 as if fully set forth herein.

82.     CitiMortgage owes a duty of care to the customers whose loans its services,

including Ms. Williamson.

83.     CitiMortgage's duty of care arises, in part, out of the Mortgage Servicing Rule

promulgated by the Consumer Financial Protection Bureau, 12 C.F.R. § 1024 <u>et</u> <u>seq</u>., the

National Mortgage Settlement, the OCC Consent Order,  U.S. Department of the Treasury, and

the Federal Housing Administration's rules and other guidance pertaining to the servicing of

FHA-insured mortgages.

84.     CitiMortgage's duty of care further arises out of its solicitation of loss mitigation

applications from borrowers, including Ms. Williamson's 2014 application, and its offers of loss

mitigation to borrowers, including the FHA-HAMP trial loan modification it offered Ms.

Williamson in October 2014 and the permanent loan modification it offered Ms. Williamson in

January 2015.

85.     CitiMortgage knew or should have known that "dual-tracking" Ms. Williamson

by improperly proceeding with foreclosure during the loss mitigation process and back-dating its

time-sensitive offer to modify Ms. Williamson's loan would cause her harm.

86.     CitiMortgage, Inc. breached its duty of care by failing to delay the foreclosure of

the home during loss mitigation review, Ms. Williamson's trial loan modification, and after Ms.

Williamson was approved for and ultimately accepted a permanent loan modification; by moving for another foreclosure judgment after Ms. Williamson had accepted a permanent loan modification; and by back-dating the time-sensitive loan modification offer so as to deprive Ms. Williamson of the time period she was entitled to receive to review and accept the offer; all of which caused injury to Ms. Williamson.

87.     CitiMortgage continuously engaged in such conduct with respect to Ms. Williamson from the time she completed her loss mitigation application on or around October 1, 2016 until at least the time the court dismissed the foreclosure case on February 23, 2015.

88.     CitiMortgage is liable for the damages suffered by Ms. Williamson as a result of its negligent acts and omissions.

<u>Count IV</u>

BREACH OF CONTRACT

*As to the FHA-HAMP Trial Period Plan*

89.     The Plaintiff incorporates by reference the allegations in Paragraphs 1-61 as if fully set forth herein.

90.     CitiMortgage entered into the FHA-HAMP Trial Period Plan with Ms. Williamson and Mr. Capasso, which required CitiMortgage to perform certain tasks, including permanently modifying the mortgage and providing documentation thereof on or before February 1, 2015 upon the satisfaction of the terms of the FHA-HAMP Trial Period Plan by Ms. Williamson.

91.     The FHA-HAMP Trial Period Plan constitutes a valid and binding contract as there is evidence of an offer, acceptance, and consideration in the form of Ms. Williamson's and

Mr. Capasso's compliance with the requirements of the FHA-HAMP Trial Period Plan with CitiMortgage, including, but not limited to, their provision of personal financial documents.

92.     Ms. Williamson and Mr. Capasso fully performed under the FHA-HAMP Trial Period Plan and CitiMortgage was thus required under the FHA-HAMP Trial Period Plan to modify the mortgage as of February 1, 2015, the Modification Effective Date.

93.     CitiMortgage's failure to timely modify the mortgage, its failure to take action to delay the foreclosure during the three month trial period, and/or the actions it took to foreclose on the home after the February 1, 2015 Modification Effective Date, including its filing of a Motion for Judgment of Strict Foreclosure on February 18, 2015, constitute breach of contract.

94.     CitiMortgage is liable to Ms. Williamson for all damages that resulted from CitiMortgage's breach of contract.

95.     CitiMortgage is further liable to Ms. Williamson for reciprocal attorney's fees per Conn. Gen. Stat. § 42-150bb for CitiMortgage's breach of the note and mortgage, as modified by the FHA-HAMP Trial Period Plan.

*As to the Permanent Loan Modification*

96.     In an offer dated January 12, 2015, CitiMortgage offered to permanently modify the mortgage so as to deaccelerate the loan, cure the default, and resolve the foreclosure.

97.     Ms. Williamson and Mr. Capasso timely accepted CitiMortgage's offer to permanently modify the mortgage by indicating to CitiMortgage, in writing, on or before January 26, 2015 that they were accepting the loan modification and by returning the signed partial claim agreement to CitiMortgage on or before January 26, 2015.

98.     The permanent loan modification constitutes a valid and binding contract as there is evidence of an offer, acceptance, and consideration.

99.     Ms. Williamson and Mr. Capasso fully complied with the terms of CitiMortgage's offer, including by sending the signed loan modification agreement to CitiMortgage on or before January 26, 2015; signing and returning the partial claim agreement, subordinate mortgage, and subordinate note on or before January 26, 2015; making their first modified loan payment on or before February 1, 2015; and executing a second loan modification agreement pursuant to Section 7 of the agreement per CitiMortgage's request on February 10, 2015.  A true and correct copy of the signed second loan modification agreement is attached as Exhibit I.

100.     CitiMortgage was therefore required under the loan modification agreement to cease collecting past-due amounts on the mortgage and cease its efforts to foreclosure on the home.

101.     CitiMortgage's failure to timely modify the mortgage and/or the actions it took to foreclose on the home after the February 1, 2015 Modification Effective Date, including its filing of a Motion for Judgment of Strict Foreclosure on February 18, 2015, constitute breach of contract.

102.     CitiMortgage is liable to Ms. Williamson for all damages that resulted from CitiMortgage's breach of contract.

103.     CitiMortgage is further liable to Ms. Williamson for reciprocal attorney's fees per Conn. Gen. Stat. § 42-150bb for CitiMortgage's breach of the note and mortgage as modified by the permanent loan modification.

Count V

PROMISSORY ESTOPPEL

*As to the FHA-HAMP Trial Period Plan*

104.    The Plaintiff incorporates by reference the allegations in Paragraphs 1-61 as if fully set forth herein.

105.    CitiMortgage made an unambiguous promise in the FHA-HAMP Trial Period Plan that was offered by CitiMortgage and accepted by Ms. Williamson and Mr. Capasso on October 21, 2014 that it would modify the terms of her loan effective February 1, 2015 so as to deaccelerate the loan, cure the default, and resolve the foreclosure if they complied with the terms of the FHA-HAMP Trial Period Plan.  CitiMortgage should have reasonably expected that this promise would induce action or forbearance on Ms. Williamson's and Mr. Capasso's part.

106.    Ms. Williamson reasonably relied on CitiMortgage's promise by making payments under the FHA-HAMP Trial Period Plan, by submitting all the documentation requested by CitiMortgage, and by foregoing all other alternatives to foreclosure.

107.    Ms. Williamson suffered injury because of her reliance on CitiMortgage's promise that it would modify the terms of her loan effective February 1, 2015 so as to deaccelerate the loan, cure the default, and resolve the foreclosure if she and Mr. Capasso complied with the terms of the FHA-HAMP Trial Period Plan.  Ms. Williamson's injuries include, but are not limited to, her expenditure of time and money to vacate the foreclosure judgment and prevent the entry of a new foreclosure judgment, including paying filing fees to open the judgment and missing work to attend court hearings, and, upon information and belief, court costs, attorney's fees, and/or other fees improperly assessed to her mortgage account.

108.    By reason of its actions, CitiMortgage is estopped from denying the existence of the FHA-HAMP Agreement and should be held to the terms of the FHA-HAMP Agreement.

109.    CitiMortgage is further liable to Ms. Williamson for reciprocal attorney's fees per Conn. Gen. Stat. § 42-150bb for CitiMortgage's breach of the note and mortgage, as modified by the FHA-HAMP Trial Period Plan.

*As to the Permanent Loan Modification*

110.    CitiMortgage made an unambiguous promise in its offer to permanently modify the mortgage dated January 12, 2015 that was accepted by Ms. Williamson and Mr. Capasso on January 24, 2015 that it would permanently modify the terms of the mortgage effective February 1, 2015 so as to deaccelerate the loan, cure the default, and resolve the foreclosure if Ms. Williamson and Mr. Capasso indicated to CitiMortgage, in writing, on or before January 26, 2015 that they were accepting the loan modification and returned the signed partial claim agreement to CitiMortgage on or before January 26, 2015.  CitiMortgage should have reasonably expected that this promise would induce action or forbearance on Ms. Williamson's and Mr. Capasso's part.

111.    Ms. Williamson reasonably relied on CitiMortgage's promise by sending the signed loan modification agreement to CitiMortgage on or before January 26, 2015; signing and returning the partial claim agreement, subordinate mortgage, and subordinate note on or before January 26, 2015; making the first modified loan payment on or before February 1, 2015; executing a second loan modification agreement pursuant to Section 7 of the agreement per CitiMortgage's request on February 10, 2015; and foregoing all other alternatives to foreclosure.

112.    Ms. Williamson suffered injury because of her reliance on CitiMortgage's promise that it would modify the terms of her loan effective February 1, 2015 so as to deaccelerate the loan, cure the default, and resolve the foreclosure if she and Mr. Capasso

accepted CitiMortgage's offer dated January 12, 2015 to permanently modify the mortgage.  Ms. Williamson's injuries include, but are not limited to, her expenditure of time and money to vacate the foreclosure judgment and prevent the entry of a new foreclosure judgment, including paying filing fees to open the judgment and missing work to attend court hearings, and, upon information and belief, court costs, attorney's fees, and/or other fees improperly assessed to her mortgage account.

113.    By reason of its actions, CitiMortgage is estopped from denying the existence of the permanent loan modification and should be held to the terms of the permanent loan modification.

114.    CitiMortgage is further liable to Ms. Williamson for reciprocal attorney's fees per Conn. Gen. Stat. § 42-150bb for CitiMortgage's breach of the note and mortgage as modified by the permanent loan modification.

## RELIEF

The Plaintiff respectfully request that judgment be entered against the Defendant for the

following:

(1) Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

(2) Actual and consequential damages;

(3) Punitive damages in an amount calculated to punish CitiMortgage for its willful

and egregious conduct, pursuant to C.G.S. § 42-110g(a);

(4) Costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(1)(C),

C.G.S. § 42-150bb, and C.G.S. § 42-110g(d); and

(5) For such other and further relief as the Court deems just and proper.

PLAINTIFF,
CHERYL WILLIAMSON

By Counsel: /s/ Sarah E. White
Sarah E. White (ct29329)
Connecticut Fair Housing Center
221 Main Street, 4th Floor
Hartford, CT  06106
(860) 263-0726
(860) 247-4236 fax
swhite@ctfairhousing.org